**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JANE DOE and JOHN DOE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 09-cv-6126 |
| | ) | |
| CULTURAL CARE, INC., DORTE STROBEL, and | ) | Judge Robert M. Dow, Jr. |
| MAUREEN MCDONNELL | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Jane Doe, filed a complaint against Defendant Cultural Care, Inc. ("Cultural Care"), and two of its employees [1].  Plaintiff's complaint was filed on behalf of herself and on behalf of her son, John Doe.[1]  The complaint alleges that Defendants committed fraud, intentionally inflicted emotional distress, and committed various acts of negligence.  The Court has jurisdiction based on diversity of citizenship.  28 U.S.C. § 1332.  Before the Court is Defendant Cultural Care's motion to dismiss [14] the action for improper venue, pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a) or, alternatively, to transfer the case to the United States District Court for the District of Massachusetts.  For the following reasons, the motion is granted in part and denied in part:  although the Court denies Defendant's motion to dismiss the action, the Court grants Defendant's alternative request to transfer the case to the United States District Court for the District of Massachusetts.

---

[1] Because Jane Doe has brought the action on behalf of her son, the Court will refer to "Plaintiff" in the singular.  Likewise, unless otherwise indicated, the Court will refer to Defendant Cultural Care as "Defendant," because the individual defendants did not join (or otherwise express a view on) Cultural Care's motion.

## I.     Background

Defendant Cultural Care is a Massachusetts corporation in the business of placing au pairs with host families in the U.S.  Compl. ¶ 7.  Defendants Dorte Strobel ("Strobel") and Maureen McDonnell ("McDonnell") are employees of Cultural Care and citizens of Massachusetts.  *Id.* ¶¶ 5-6.  In October of 2007, Plaintiff was researching childcare options for her son, John Doe.  *Id.* ¶ 8.  Upon seeing an advertisement for Cultural Care, she went to the company's website to investigate.  *Id.* ¶ 9.  On or about October 19, 2007, Plaintiff spoke with Strobel, who was at that time acting within the scope of her employment with Cultural Care.  *Id.* ¶ 12.  Strobel told Plaintiff that an au pair from Columbia, named Julian, was available.  *Id.* Strobel then informed Plaintiff that if she wished to retain Julian, she would need to pay a fee to Cultural Care that evening and pick Julian up from his current host family—or else he would be returned to Columbia and it could be months before another au pair would be available for placement.  *Id.* ¶ 13.  Strobel told Plaintiff that the reason for Julian's dismissal was that the previous placement just "did not work out," and offered to provide her with contact information for Julian's prior host family, but never did so.  *Id.* ¶¶ 14-15.  Plaintiff then told Strobel that she would not hire an au pair who was a smoker or drinker, and Strobel assured her that Julian was neither.  *Id.* ¶ 16.  Plaintiff then paid Cultural Care's requisite fee and on October 21, 2007 picked Julian up from his prior host family and took him to her home in Lockport, Illinois.  *Id.* ¶ 17.

Shortly after employing Julian, Plaintiff discovered that he was entertaining friends and having parties at her home, and that Julian and his friends were smoking and drinking, all against her express wishes.  Compl. ¶ 18.  On or about November 30, 2007, Plaintiff complained about Julian's conduct to McDonnell, a Program Director at Cultural Care.  *Id.* ¶ 19.  During the

conversation, McDonnell refused to remove Julian from Plaintiff's home until a two-week "transition" period had lapsed, during which Plaintiff would have to continue to house Julian notwithstanding her concerns. *Id.* ¶ 20. Over the course of the next two weeks, Julian physically struck John Doe, sexually abused him, and took nude photographs of him. *Id.* ¶ 21. Plaintiff subsequently learned that Julian previously had been discharged from a host family in California. *Id.* ¶ 22.

Plaintiff's complaint contains five counts against all Defendants. Count I alleges negligence for failure to adequately screen, train, or supervise au pairs and to disclose prior employment experience of said au pairs to host families. Count II alleges fraud for misrepresentations and omissions made by Cultural Center prior to Plaintiff's decision to contract with the company. Count III alleges negligent infliction of emotional distress for breach of the same duties pled in Count I. Count IV alleges negligent hiring, supervision, and retention. Count V alleges intentional infliction of emotional distress.

Defendant Cultural Care's motion to dismiss contends that venue does not properly lie in this Court because of a forum selection clause in the parties' agreement. The clause reads in pertinent part: "In the event of any claim, dispute or proceeding arising out of the relationship of [Plaintiff] and [Defendant Cultural Care], or any claim which in contract, tort, or otherwise at law or in equity arises between the parties, whether or not related to this agreement, the parties submit and consent to exclusive jurisdiction and venue of the courts of the Commonwealth of Massachusetts and of the United States District Court for the District of Massachusetts" [14-1, at 3].

## II.     Legal Standard

A motion to dismiss for improper venue is properly brought pursuant to Federal Rule of

Civil Procedure 12(b)(3).  See *Cont'l Ins. Co. v. M/V Orsula*, 354 F.3d 603, 606-607 & n.2 (7th

Cir. 2003).  In ruling on a motion to dismiss for lack of venue, the court takes the allegations in

the complaint as true (unless contradicted by affidavit) and draws all reasonable inferences in

favor of Plaintiff.  In addition, the Court may examine facts outside of the complaint.  See

*Murphy v. Schneider Nat'l Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2003); *New Moon Shipping Co.,*

*Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997); *ISA Chicago Wholesale, Inc. v.*

*Swisher Int'l, Inc.*, 2009 WL 3152785, at *3 (N.D. Ill. Sept. 25, 2009) (citations omitted).  The

district court "shall dismiss, or if it be in the interest of justice, transfer" any case filed in the

wrong venue "to any district or division in which it could have been brought."  28 U.S.C. §

1406(a).

A motion to dismiss pursuant to Rule 12(b)(3) may be based on the existence of a valid

forum selection agreement between the parties.  *Muzumdar v. Wellness Int'l Network, Ltd.*, 438

F.3d 759, 760 (7th Cir. 2006); *M/V Orsula*, 354 F.3d at 606-607.  However, the existence of such

an agreement does not, standing alone, render a venue improper.  *Trio Video, LLC v. NTL*

*Capital, LLC*, 2007 WL 2230036, at * 3 (N.D. Ill. July 27, 2007); see also *Stewart Org., Inc. v.*

*Ricoh Corp.,* 487 U.S. 22, 29 n. 8 (1988) (affirming denial of motion to dismiss because venue

was proper under 28 U.S.C. § 1391(c) despite the existence of a valid forum selection clause).  A

forum selection clause does not by itself render venue improper under 28 U.S.C. § 1391 (the

general venue statute), because a forum selection clause is an agreement between the parties

about which forum is most convenient; yet, proper venue is a statutory question.[2]  Nonetheless,

---

[2] The general venue statute, 28 U.S.C. § 1391, provides: "A civil action wherein jurisdiction is founded
only on diversity of citizenship may * * * be brought only in (1) a judicial district where any defendant

federal courts generally enforce parties' agreements to litigate in a specified forum. See *Northwestern Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 375 (7th Cir. 1990) (citing *Heller Fin. Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989) for the proposition that "a valid forum selection clause is a waiver of the right to move for a change of venue on the grounds of inconvenience to the moving party"); *Trio Video*, 2007 WL 2230036, at * 3 (ruling that a necessary implication of *Donovan* is that "a valid forum selection clause is a waiver of the right to defend against a motion to transfer to the selected forum on the grounds of inconvenience to the opposing party"). Therefore, if the forum selection clause is valid and enforceable, the district court will accord it weight by transferring the case pursuant to 28 U.S.C. § 1404, even if venue would have been proper under 28 U.S.C. § 1391.[3] *Trio Video*, 2007 WL 2230036, at * 3 (transferring a case pursuant to 28 U.S.C. § 1404 upon holding that, although venue was proper, a valid and enforceable forum selection clause warranted transfer on the grounds that parties had already agreed to the most "convenient" forum).

## III.   Analysis

The parties' briefs anticipate that federal law applies to Defendants' motion, a prediction that, although not definitively decided in this circuit, is both likely correct and an agreement that the parties were permitted to make. *Donovan*, 916 F.2d at 374 ("Probably, therefore, the parties before us are correct to concede that the issue of [forum-selection] validity is one of federal law, though we need not decide this, since litigants are, within limits not exceeded here, permitted to designate what law shall control their case."). Federal law accords forum selection clauses a

---

resides * * * (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, * * * or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought."

[3] Even though venue may be proper in one district, 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

presumption of validity. *IFC Credit Corp. v. Aliano Bros. Gen. Contractors, Inc.*, 437 F.3d 606, 610 (7th Cir. 2006). The party opposing its enforcement, therefore, bears the burden of showing that the clause should not be enforced. *Shell v. R.W. Sturge, Ltd.*, 55 F.3d 1227, 1229 (6th Cir. 1995). The Supreme Court has held that forum selection clauses are enforceable, unless the party challenging enforcement of it can "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching," or alternatively that "trial in the contractual forum will be so gravely difficult and inconvenient that [the party] will for all practical purposes be deprived of his day in court." *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 18 (1972). The Seventh Circuit, distilling the *Bremen* teachings, has recognized some exceptions to the presumption of validity that attaches to forum selection clauses. *Bonny v. Society of Lloyd's*, 3 F.3d 156, 160 (7th Cir. 1993). The first exception is where incorporation of the clause into the contract was the result of "fraud, undue influence, or overweening bargaining power." *Id.* The second exception is where "the selected forum is so gravely difficult and inconvenient that [the complaining party] will for all practical purposes be deprived of its day in court." *Id.* The third exception applies where enforcement of the clause "would contravene strong public policy of the forum in which the suit is brought, declared by statute or judicial decision." *Id.* Finally, the Seventh Circuit has noted that the presumptive validity of a forum selection clause might be rebutted "[i]f there is inconvenience to some third party * * * or to the judicial system itself." *Donovan*, 916 F.2d at 378. The applicability of each exception is assessed below.

### A.  Fraud or Overreaching

The Supreme Court has cast the examination of fraud or overreaching as a question of "fundamental fairness." *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 595 (1991). Thus, the

inclusion of the forum selection clause may be the product of fraud or overreaching if the party that drafted the contract included it merely as a means of discouraging other parties to the contract from pursuing legitimate claims. *Id.* However, if the forum specified in the contract is one and the same as the drafting party's principal place of business, the obvious convenience to that party militates against any finding that it acted in bad faith. See *id.*

Furthermore, to hold the clause unenforceable under the framework articulated in *Bremen*, the *inclusion* of the forum selection clause within the contract must have been the result of improper influence. *Trio Video*, 2007 WL 2230036 at * 3; see also *Bremen*, 407 U.S. at 15. Accordingly, "[g]eneral claims of fraud do not suffice to invalidate the forum selection clause." *Preferred Capital, Inc. v. Assocs. in Urology*, 453 F.3d 718, 722 (6th Cir. 2006); see *Great Earth Cos. v. Simons*, 288 F.3d 878, 884 (6th Cir. 2002) (invalidating forum selection clause because its inclusion was procured by fraud).

Other circuits have found a helpful test for fraud or overreaching to be one that considers the physical characteristics of the clause and asks whether the plaintiff had "the ability to become meaningfully informed of the clause and to reject its terms." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009); see *Wallis v. Princess Cruises, Inc.*, 306 F.2d 827, 835-37 (9th Cir. 2002); *Ward v. Cross Sound Ferry*, 273 F.3d 520, 523-24 (2d Cir. 2001). In *Krenkel*, the court held that plaintiffs had such an opportunity where the forum selection clause was preceded by a bold, capitalized notification: "**READ BEFORE SIGNING**." *Krenkel*, 579 F.3d at 1282. However, contrary to Plaintiff's argument, the clause need not be so conspicuous. In the landmark *Shute* case, the Supreme Court ruled that a forum selection clause that was printed in the lower left-hand corner of a passenger ticket was enforceable. 499 U.S. at 587, 595. Indeed, while a clause "buried in illegible fine print" may be unenforceable, one that can be

comfortably read will be considered valid, even if the font size is quite small. See *Donovan*, 916 F.2d at 377 (noting, despite "heavily corrected middle-aged eyesight," that Judge Posner could still make out the forum selection clause, even though the print was small and provided to the court in pale, underexposed photocopies). Additionally, where the forum selection clause appears near the area designated for a plaintiff's signature, courts have found evidence that the plaintiff had an opportunity to learn of the clause and that its inclusion was not the result of fraud or overreaching. See *Trio Video*, 2007 WL 2230036, at * 3.

Here, Plaintiff argues that she was rushed through the process of accepting the terms of the contract and the forum selection clause was not communicated to her, the facts that she contends constitute fraud or overreaching and in effect deprived her of the opportunity to learn of the existence of the forum selection clause. However, the fact that Massachusetts is Cultural Care's principal place of business casts serious doubt on allegations of bad faith—as the Court held in *Shute*, the most reasonable explanation for the inclusion of the clause is that the business transacts with parties far outside the jurisdiction in which it sits and finds litigating in a single forum an efficient way to do business. Plaintiff's fraud argument also does not go directly to the *inclusion* of the clause in the contract, but rather merely alleges that the entire transaction was fraudulent since she was rushed to accept all of the terms, not just the forum selection clause. Moreover, the allegations that she felt rushed are unmatched by conduct on Defendants' part indicating that Defendants' actually put the screws to her (which allegations might merit a closer look).[4] The evidence thus indicates that she had an opportunity to make herself aware of the clause. The print is small, but it is legible. The clause is set off in a separate paragraph, not

---

[4] Although Plaintiff's affidavit says that she was told to hurry when she was transacting with Defendant (Pl. Aff. ¶ 14), there is little detail to Plaintiff's broad assertions. There is no indication that, for instance, she asked for time to read the form but was told that reading the form would jeopardize her ability to obtain childcare.

"buried" between unrelated terms, and it is in the final paragraph of the agreement—directly above where Plaintiff electronically signed. Finally, the agreement spanned only two pages. Plaintiff has failed to demonstrate that the inclusion of the forum selection clause was induced by fraud or overreaching.

**B.      Inconvenience to Doe**

The Supreme Court has held that absent a showing that litigating in the selected forum would be "so gravely difficult and inconvenient that [the party] would for all practical purposes be deprived of his day in court," there is "no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain." *Bremen*, 407 U.S. at 18. The Supreme Court also has indicated that a party seeking invalidation of a forum selection clause bears a "heavy burden" if the argument is premised on inconvenience to a party. *Shute*, 499 U.S. at 595. This is so because the *raison d'être* of a forum selection clause is to procure a waiver of the right to assert inconvenience to a party as grounds for litigating in any other than the contractual forum (inconvenience to third parties is discussed below). See *Donovan*, 916 F.2d at 378; *Heller Fin.*, 883 F.2d at 1293. And critically, the case law draws a distinction between mere inconvenience and impossibility. *E.g.*, *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1142-43 (9th Cir. 2003) (district court erred by not accepting plaintiff's allegation that he was unable to travel to Wisconsin, since there was no evidentiary hearing to resolve disputed facts).

Plaintiff has not shown that if the forum selection clause is held to be enforceable and valid, then she will be effectively deprived of her day in court. Her argument is that her son's condition will make it very difficult and stressful on him to travel in order to litigate. She does not allege that she is *unable* to bring the suit in Massachusetts. Although the Court is sensitive to the particular concerns that may apply where victims of sexual abuse are called as witnesses,

Plaintiff has not offered evidence that additional travel will impose burdens beyond those that are present whenever sex abuse victims[5] find themselves drawn into the courts.  See, *e.g.*, Karen L. Kinnear, CHILDHOOD SEXUAL ABUSE 26 (2d ed. 2007) ("children are often more traumatized by the court proceedings than by the sexual abuse"); Jodi A. Quas *et al.*, CHILDHOOD SEXUAL ASSAULT VICTIMS: LONG-TERM OUTCOMES AFTER TESTIFYING IN CRIMINAL COURT 72 (2005) ("testifying in the adversarial system appears to be a salient feature in and of itself with direct implications for negative outcomes * * *."); Gail S. Goodman *et al.*, TESTIFYING IN CRIMINAL COURT 50 (1992) (finding, in the criminal context, that testifying in court caused additional trauma).  Moreover, to the extent traveling imposes additional trauma, the transferee court will have the ability to take steps to minimize it.  *Cf.*, *e.g.*, *Maryland v. Craig*, 497 U.S. 836, 851, 853-54 (1990) (approving, in a criminal case, a Maryland procedure by which a child witness was shielded from facing the defendant and surveying the many protections that jurisdictions have used); *Coy v. Iowa*, 487 U.S. 1012, 1022-23 (O'Connor, J., concurring) ("Many States have determined that a child victim may suffer trauma from exposure to the harsh atmosphere of the typical courtroom and have undertaken to shield the child through a variety of ameliorative measures.").

In short, Plaintiff has not made a sufficient showing that it would be "unfair, unjust, or unreasonable" (*Bremen*, 407 U.S. at 18) to hold her to the parties' bargain.  Although Plaintiff is a physician and asserts that she has "attested with reasonable medical certainty that it would be detrimental to her son's well-being" (Pl. Resp. at 8) for him to travel, that assertion must be discounted for two reasons.  First, the Court has reservations about accepting a medical evaluation made by a party to the lawsuit.  Although the opinions of others are alluded to in her affidavit, Plaintiff does not offer that evidence.  Second, although Plaintiff is a physician, she has

_____
[5] Again, the Court takes the allegations in the complaint as true for present purposes.

spent the lion's share of her career as an emergency room doctor; there is insufficient indication that she has the required expertise to make the evaluation that she offers in her affidavit. Accordingly, Plaintiff has not established that the grave-inconvenience factor applies in this case.

### C.     Contravention of Public Policy

Courts also have held that a forum selection clause may be unenforceable if "[its] enforcement * * * would contravene a strong public policy of the forum in which the suit is brought, declared by statute or judicial decision." *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 525 (quoting *Bonny*, 3 F.3d at 160 (internal citation omitted)). In this case, Plaintiff has not argued that any clear public policy would be contravened by the Court's enforcement of the forum selection clause. Instead, Plaintiff's public policy argument is indistinguishable from her previous one—the argument repeats her contention that she will be deprived of her day in court. No further public policy is asserted. Therefore, Plaintiff has failed to establish that any strong public policy will be frustrated such that the clause is "unreasonable." *Bonny*, 3 F.3d at 160.

### D.     Inconvenience to Third Parties or the Judicial System

When a forum selection clause is otherwise valid and enforceable, the only remaining justification for a court to permit the parties to litigate in a forum other than the one designated by the contract is where "there is inconvenience to some third party * * * or to the judicial system itself." *Donovan*, 916 F.2d at 378. However, where the possibility of adverse effects on third parties is slight, the clause should be treated like any other contract. See *id.* at 376. Courts are willing to consider the burden on third parties and on the judicial system because while a party bound by a forum selection clause may waive its own right to assert convenience as a basis for litigating in a different forum, the party cannot "waive rights of third parties, or the interest of

the federal judiciary in the orderly allocation of judicial business." *IFC Credit Corp.*, 437 F.3d at 613. Where refusing to enforce the forum selection clause would simply shift the burden borne by one party's witnesses to those for the other party, third party inconvenience plays no role in the court's decision as to the enforceability of the clause. See *Heller Fin.*, 883 F.2d at 1293 (upholding enforceability of a forum selection clause where transferring the case to a forum other than the one specified in the contract would be more convenient for one party's witnesses, but only at the expense of witnesses for the opposing party).

Plaintiff argues that inconvenience to the witnesses that she intends to present justifies allowing the case to proceed in Illinois. The witnesses include treating medical professionals as well as a tennis instructor, teacher, and former principal. Based on the record before the court, the ability of the latter two witnesses to offer much in the way of admissible testimony may be limited. Moreover, Defendant, although it might have offered more briefing on the issue, would also face inconvenience as well as economic pressure if it were forced to litigate outside of its negotiated forum. See *IFC Credit Corp.*, 437 F.3d at 613; *Donovan*, 916 F.2d at 378. The relatively small number of witnesses in this case indicates that the hardship endured by Plaintiff's witnesses will, if the case proceeds to trial, prove no greater than the hardship endured by witnesses in the mine-run of federal cases in which one or both parties call out-of-state witnesses. In sum, neither the federal judiciary's interest in the orderly allocation of business nor the inconvenience to third parties creates a persuasive rationale for invalidating the forum selection clause in this case.

Because it is appropriate to give effect to the forum selection clause, the only question is whether the Court should dismiss the case or transfer venue "in the interest of justice." See *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) ("The language of § 1406(a) is amply broad

enough to authorize the transfer of cases * * *."); *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986) ("Factors traditionally considered in an 'interest of justice' analysis relate to the efficient administration of the court system."). Defendant has not convinced the Court that this case presents appropriate facts for dismissal. See *M/V Orsula*, 354 F.3d at 608 (district court was justified in dismissing rather than transferring suit where the parties were sophisticated and both parties were familiar with the forms at issue). The Court concludes that transfer rather than dismissal is appropriate in this case; although Plaintiff is a physician and Defendant describes her as "worldly," there is insufficient evidence that she is learned in the law such that the harsh sanction of dismissal should attach to her decision to bring suit in this district.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss [14] is granted in part and denied in part: the case is transferred to the United States District Court for the District of Massachusetts.

Dated:  August 3, 2010

_____
Robert M. Dow, Jr.
United States District Judge